STATE OF NEBRASKA, APPELLEE, V.
LUKE KELLOGG, APPELLANT.

633 N.W. 2d 916

Filed September 18, 2001. No. A-00-1204.

Timothy M. Schulz, of Yost, Schafersman, Lamme, Hillis, Mitchell, Schulz & Twidwell, P.C., for appellant.

Don Stenberg, Attorney General, and Scott G. Gunem for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

This appeal addresses whether a convicted felon can be properly sentenced when a presentence investigation has not been performed.

## BACKGROUND

Luke Kellogg was charged in the district court for Dodge County with one count of burglary, a Class III felony, and multiple counts of forgery, Class IV felonies. Kellogg could have been charged as a habitual criminal. As a result of a plea bargain, Kellogg entered a plea of no contest to the burglary charge and guilty to two counts of forgery, with the State forgoing the habitual criminal charge and dismissing two other forgery charges, in a hearing on July 10, 2000. After the trial court accepted the pleas, the following exchange occurred:

> [The court:] Now, earlier you had mentioned, [prosecutor], that there was an agreement between the parties for an evaluation. You want to set that on the record again? What's you're [sic] request?
>
> [Prosecutor]: Yes. Your Honor, at this time prior to sentencing the State would request a 90-day evaluation at the Department of Corrections.
>
> THE COURT: [Defense counsel]?
>
> [Defense counsel]: We concur with that request, Your Honor.
>
> THE COURT: Is that correct, Mr. Kellogg?

[Kellogg]: Yes, sir.

THE COURT: The Court will order an evaluation at the Department of Corrections, and the length of that will be an evaluation not to exceed 90 days which, I believe, is according to statute.

Anything else, [defense counsel]?

[Defense counsel]: No, Your Honor.

THE COURT: Anything else, [prosecutor]?

[Prosecutor]: No, Your Honor.

The trial court indicated that an order would be prepared for the evaluation, which would be no longer than 90 days, and that when it was concluded, or close to being concluded, a sentencing date would be set. That concluded the plea hearing with no one ever mentioning "presentence report" or "presentence investigation."

There was no presentence investigation concerning Kellogg. Neb. Rev. Stat. § 29-2261(1) (Cum. Supp. 2000) provides: "Unless it is impractical to do so, when an offender has been convicted of a felony, the court shall not impose sentence without first ordering a presentence investigation of the offender and according due consideration to a written report of such investigation."

Additionally, Neb. Rev. Stat. § 83-1,105.01 (Reissue 1999), which requires the court to fix the minimum and maximum limits of indeterminate sentences, contains the following provision which forms the basis for the "evaluation" referred to in the quoted exchange between the court and counsel:

(3)(a) When the court is of the opinion that imprisonment may be appropriate but desires *more detailed information as a basis for determining the sentence to be imposed than has been provided by the presentence report required by section 29-2261*, the court shall commit an offender to the Department of Correctional Services for a period not exceeding ninety days. The department shall conduct a complete study of the offender during that time, inquiring into such matters as his or her previous delinquency or criminal experience, social background, capabilities, and mental, emotional, and physical health and the rehabilitative resources or programs which may be available to suit his or her needs.

(Emphasis supplied.) Section 83-1,105.01(3)(a) then provides that after the evaluation, the offender shall be returned to court for sentencing. The statute also specifies that the court shall be provided with a written report of the results of the study, including recommendations of the Nebraska Department of Correctional Services, and that after receiving the report and recommendations, the court shall proceed to sentence the offender with the term of the sentence running from the date of the original commitment for evaluation.

With these statutes in mind, we return to the record in the instant case which contains another hearing on September 25, 2000, with the judge, the prosecutor, Kellogg, and defense counsel present. The court indicated that it had received the evaluation of the Department of Correctional Services on September 8 and had received on September 22 a motion for continuance from defense counsel. After the court ascertained that defense counsel had reviewed the report of the evaluation, the court heard argument on the motion for continuance. Defense counsel asserted that while doctors in Lincoln had given Kellogg a physical examination during the 90-day evaluation and found multiple sclerosis, they did not look at any of his other medical records or psychological records. Defense counsel suggested Kellogg had bipolar disorder and argued that the evaluation did not address the contents of his previous medical records. The trial judge quite clearly expressed the opinion that there was little concerning Kellogg's psychiatric or physical condition which would impact sentencing, given Kellogg's long history of crime. However, the court ultimately agreed to a continuance of the sentencing for 1 month, although observing that Kellogg was "without question" going to the penal complex.

Sentencing occurred on October 23, 2000, and again there was never any mention by anyone of a presentence report. The "sentencing materials" contain a 6-page "Nebraska Department of Correctional Services Adult Division Classification Study." This has one page of background information, including his prior crimes and a list of chemicals that he does or does not use. Additionally, the evaluation includes the case manager's comment and summary and the psychologist's comment and summary, but no recommendation on sentencing. There are also a

few letters to the judge from friends and relatives arguing that Kellogg should not go to prison. Finally, there is a letter of argument from defense counsel.

The court sentenced Kellogg to 20 months' to 5 years' imprisonment on each of the two counts of forgery. The forgery counts are not involved in this appeal. The court then sentenced Kellogg to 10 to 15 years' imprisonment on the burglary count "at hard labor, Sundays and holidays excepted as to hard labor." The two sentences on the forgeries were to be served concurrently, but consecutive to the burglary sentence. Kellogg appeals.

## ASSIGNMENTS OF ERROR

Kellogg contends that his defense counsel was ineffective because (1) counsel did not heed Kellogg's requests to decline the plea offer and proceed to a jury trial and (2) counsel did not request a presentence investigation. Kellogg also contends that the trial court erred in ordering a 90-day evaluation in lieu of a presentence investigation and in imposing an excessive sentence for the burglary.

## ANALYSIS

*Ineffective Assistance of Counsel.*

Kellogg claims that his defense counsel was ineffective in failing to heed Kellogg's requests to decline the plea bargain and proceed to trial. From our review of Kellogg's brief, it is questionable whether the assignment is both assigned and argued, as Nebraska appellate courts require. See *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000). In any event, Kellogg's brief concedes that the record does not recount any communication between defense counsel and Kellogg about the decision to accept the plea bargain on the burglary charge. Kellogg acknowledges that we may, therefore, conclude that this claim can only be considered in a postconviction action.

While claims of ineffective assistance of counsel raised for the first time on direct appeal, as this is, do not require dismissal ipso facto, the determining factor is whether the record is sufficient to adequately review the question. *State v. Toof*, 9 Neb. App. 535, 616 N.W.2d 32 (2000). All we have here is an assertion in Kellogg's brief that his counsel failed to heed his requests to try the case. The conclusion that the record is inadequate to review

this claim is obvious. At a minimum, an adequate record would include testimony from counsel and Kellogg about their communications concerning the merits of trial versus acceptance of the plea agreement. Without such evidence, the record is wholly inadequate for appellate review at this time, and thus, the assigned error is without merit in this appeal.

Under this heading of "ineffective assistance of counsel," we also include the second assignment of error that defense counsel did not demand or request that a presentence investigation be completed prior to sentencing. Admittedly, the record does not show any such request or demand by counsel. However, given that Kellogg has a substantial prior record of some consequence, one can readily envision a strategy of choosing a Department of Correctional Services' evaluation and eschewing a presentence report, as a way of obscuring his history from the sentencing judge. Thus, it may be that a strategic decision of counsel was involved in forgoing a presentence investigation, but the record is silent on any such strategy. Accordingly, the record is likewise inadequate to address this claim on the basis of ineffective assistance of counsel. See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000) (appellate court gives due deference to trial counsel's strategic decisions). However, our conclusion on this assignment of error does not resolve the question of the lack of a presentence investigation.

*Presentence Investigations—Mandatory for Felony Sentencings?*

■ The third assignment of error is that the trial court erred in ordering the 90-day evaluation at the Diagnostic and Evaluation Center of the Department of Correctional Services in lieu of first ordering a presentence investigation. We have previously quoted the seminal statute, § 29-2261(1). That statute, when summarized, provides that when an offender is convicted of a felony, sentence shall not be imposed without a presentence investigation and due consideration thereof, unless it is impractical to do so. The record before us does not reveal anything which would make it impractical to do a presentence investigation before deciding on the sentence for the burglary charge.

The first mention of § 29-2261(1) in the reported decisions is found in *State v. Jackson*, 192 Neb. 39, 218 N.W.2d 430 (1974).

Justice Spencer's succinct opinion in *Jackson* noted that the statute was enacted in 1971; that it makes a written presentence investigation of all felony offenders "mandatory, unless impractical to do so"; and that because such provision was not followed, the sentence in *Jackson* was vacated and the matter remanded "for resentencing according to law." *Id.* at 40-41, 213 N.W.2d at 431. In *State v. Zobel*, 192 Neb. 480, 222 N.W.2d 570 (1974), the court also vacated a sentence with directions to have a presentence investigation prepared and given due consideration, citing § 29-2261. The *Zobel* court, referencing its opinion in *Jackson*, said: "We have recently held that this statute must be complied with." 192 Neb. at 484, 222 N.W.2d at 573.

In *State v. Simants*, 197 Neb. 549, 557, 250 N.W.2d 881, 887 (1977), the court stated that § 29-2261 "requires" a court to order a presentence investigation. See, also, *State v. Cardin*, 194 Neb. 231, 231 N.W.2d 328 (1975). In contrast to the instant case, the defendant in *State v. Bruns*, 200 Neb. 612, 265 N.W.2d 210 (1978), contended that it was improper for the trial court to order a presentence investigation in his misdemeanor case. The court cited § 29-2261 and said: "While the court should not impose sentence in any felony without a presentence investigation, the court is specifically authorized to order a presentence investigation in any case." 200 Neb. at 614, 265 N.W.2d at 211. The court rejected the defendant's argument of being punished by his prior misdeeds and found that it would be a "dereliction of duty" to ignore his three previous assault and battery convictions. *Id.* These four decisions appear to leave little doubt that the trial court must have a presentence investigation before sentencing a felony offender.

However, none of these four cases discuss whether there had been a waiver of the right to a presentence investigation by a defendant so that the defendant was precluded from claiming noncompliance with § 29-2261 as error. The question of waiver is first discussed in *State v. Tolbert*, 223 Neb. 794, 394 N.W.2d 288 (1986), where the defendant pled guilty to one count of escape as a result of her departure from an alcohol treatment program in which she was enrolled while serving a 90-day sentence for various misdemeanor convictions. When the plea on the escape charge was taken, counsel for the defendant suggested

that the court simply review the extensive presentence investigation which had been done for her misdemeanor convictions rather than requiring a new investigation because nothing had changed in the intervening 2 months since the completion of the presentence investigation for the misdemeanors. The court agreed to follow that procedure, but at sentencing, the court specifically asked the defendant and her counsel if they desired to waive her right to have a presentence investigation completed with regard to the escape conviction, to which both responded in the affirmative. (This was not done in Kellogg's case.) On appeal, the defendant assigned error to the sentencing court's failure to obtain a presentence investigation. The Supreme Court quoted the language of § 29-2261 and said that it construed this statute "as a mandate upon the sentencing court to obtain and consider a presentence investigation with every felony conviction." 223 Neb. at 795, 394 N.W.2d at 289. The court further stated that this was for the benefit of the defendant, that the statute gave the defendant a statutory right to a presentence investigation, but that the right "may be waived." *Id.* But, the Supreme Court in *Tolbert* did not hold, except by implication, that there had been a waiver of the investigation which it had described in *State v. Jackson*, 192 Neb. 39, 218 N.W.2d 430 (1974), as "mandatory."

We think it valuable to examine the case cited by the *Tolbert* court as support for the notion that the presentence investigation may be waived, *State v. Hiross*, 211 Neb. 319, 318 N.W.2d 291 (1982). In discussing *Hiross*, the *Tolbert* court said that once Hiross waived the court's offer to provide her with a presentence investigation, Hiross could not later claim error. However, it may be noteworthy that in *Hiross*, the crime at issue was a misdemeanor, whereas § 29-2261 applies only in the event of a felony conviction.

After its discussion of waiver, the *Tolbert* court recounted the availability of the complete presentence investigation done on Tolbert 2 months earlier, noting that in instances of probation revocation, successive and repetitive presentence investigations are not required, citing *State v. Snider*, 197 Neb. 317, 248 N.W.2d 342 (1977), and *State v. Herzog*, 203 Neb. 195, 277 N.W.2d 705 (1979). The *Tolbert* court then said that the "saving clause" where a presentence investigation is not required in

cases where it would be impractical, meant that a presentence investigation in Tolbert's situation would be needlessly repetitive of the one completed a short time earlier and thus the earlier investigation "satisfied the mandate of § 29-2261." 220 Neb. at 796, 394 N.W.2d at 289.

We see *Tolbert* as teaching that there are two situations in which the presentence investigation mandated by § 29-2261 is not required before a felony sentencing. There is the obvious ground specifically set forth in the statute, i.e., when it is "impractical" to do a presentence investigation. The second is when the defendant waives the right to a presentence investigation, but since there was not an express finding of waiver in *Tolbert*, exactly what a waiver might entail appears somewhat uncertain. Generally, "[a] waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct." *State v. Kennedy*, 224 Neb. 164, 170, 396 N.W.2d 722, 726 (1986).

We have previously quoted the exchange between the court and the attorneys about the 90-day evaluation which, as far as the record reveals, began as a request from the prosecutor to the court, as part of the plea bargain, for "a 90-day evaluation at the Department of Corrections," to which defense counsel responded, "We concur with that request, Your Honor." And while Kellogg verbally assented, the record lacks any showing that Kellogg was aware that a presentence investigation was mandatory before a felony sentencing, as the court in *State v. Jackson, supra,* described it, nor does the record show that Kellogg was aware that having such an investigation was his "right" as said by the court in *State v. Tolbert*, 223 Neb. 794, 394 N.W.2d 288 (1986). Accordingly, we cannot find that there was a voluntary and intentional relinquishment of a known right by Kellogg. To assist our analysis, we refer to a criminal defendant's waiver of his or her Sixth Amendment right to counsel and note that in such context, it has been said that "the key inquiry is whether [the defendant] was sufficiently aware of the right to have counsel and of the possible consequences of a decision to forgo the aid of counsel" in determining whether there has been a knowing and intelligent waiver. *State v. Wilson*, 252 Neb. 637, 648, 564 N.W.2d 241, 250 (1997). *Wilson* deals with a constitutional right which is absolutely

critical to the proper functioning of our adversarial criminal justice system, which comes into play before a defendant is ever convicted and sentenced. A presentence investigation does not rise to the same level. Nonetheless, the notion that the record should establish some level of knowledge on the part of the defendant that he or she has a statutory right to a presentence investigation before there can be a waiver only makes sense.

We find no advisement by the court of the right given to Kellogg by § 29-2261 or any other evidence of his understanding that such a right existed. His only involvement, as far as the record reveals, was his perfunctory assent to what counsel told the judge. The fact that a presentence investigation was never even discussed in this entire plea-taking and sentencing process is of no small consequence and also precludes a finding that there was a waiver.

We now address the State's argument that Kellogg waived any right to a presentence investigation at the plea hearing. The State points out that when recounting the agreement for the judge, the prosecutor said that "the State would recommend along with defense counsel that the defendant be sent to the Nebraska Department of Corrections for a 90-day evaluation prior to sentencing." The State also points to a motion made by defense counsel to continue the sentencing date of September 25, 2000. That motion sets forth a number of reasons and factual predicates, including that Kellogg was committed by the court to the Department of Correctional Services for evaluation pursuant to Neb. Rev. Stat. § 29-2204 (Cum. Supp. 2000) and that "the above commitment was done with the agreement of the Defendant and the State to waive a Presentence Investigation and utilize the evaluation to provide the necessary information for sentencing." Defense counsel stated in the motion that "it was believed by the Defendant's counsel that the evaluation would provide the best and most complete information for the use of the parties and the Court in preparation for sentencing." We cannot agree that this shows a waiver. The statement at the plea taking fails to account for the case law making the presentence investigation "mandatory" as well as a right of the defendant—and the record does not reveal the level of knowledge on the part of Kellogg which is typically associated with waivers of

rights by criminal defendants. As for the motion of defense counsel, it is merely counsel's after-the-fact characterization of what has already occurred, which is of little moment when the record does not show a waiver.

*Savings Clause—Impracticality.*

As has been shown from the cases cited above, the existence of a presentence investigation done shortly before the sentencing at issue has been used to trigger the savings clause of the statute because it is impractical to duplicate what has already been recently done. While there is no other presentence investigation as such in this record, there is the evaluation by the Department of Correctional Services, and we believe we must consider whether it contains information upon the subjects which are mandated by § 29-2261 so that repetition thereof by a separate presentence investigation becomes "impractical."

■ The evaluation procedure used by the district court is found at § 83-1,105.01(3)(a), and that statute begins with the premise that when the court believes that imprisonment may be appropriate, "but desires more detailed information as a basis for determining the sentence" than has been provided by the presentence report, then the offender may be committed for 90 days for an evaluation by the Department of Correctional Services. Thus, the statute contemplates that the evaluation while the defendant is incarcerated is for the provision of information over and above what is in the presentence report in order to assist the judge in the sentencing decision. In short, under the statute, a presentence investigation, which the judge finds inadequate, is a predicate to an evaluation by the Department of Correctional Services. Thus, in considering "impracticality," an obvious problem is presented when there is no presentence investigation, as here. In any event, § 83-1,105.01 provides that the Department of Correctional Services shall conduct "a complete study of the offender . . . inquiring into such matters as his or her previous delinquency or criminal experience, social background, capabilities, and mental, emotional, and physical health and the rehabilitative resources or programs" available to suit his or her needs. The statute allows the Department of Correctional Services to make recommendations which it deems helpful to the proper resolution.

Section 29-2261(3), providing for presentence investigations, mandates what shall be included, when available: an analysis of the circumstances attending the commission of the crime, the offender's history of delinquency or criminality, physical or mental condition, family situation and background, economic status, education, occupation, and personal habits and "any other matters that the probation officer deems relevant or the court directs to be included." Additionally, all local and state police records and reports are to be included. Finally, if victim statements are not included, then the probation officer is to indicate that he has contacted the victim to no avail. § 29-2261(4)(a).

Thus, with the various statutory requirements of evaluation and presentence investigation in place, we raise the question of whether it could be said that it was "impractical" to order a presentence investigation, as in *State v. Tolbert*, 223 Neb. 794, 394 N.W.2d 288 (1986), i.e., because a presentence investigation would be duplicative of what had already been done in the evaluation. (In asking this question, we must attempt to ignore the fact that the statute which authorizes the evaluation clearly contemplates that the evaluation follows a presentence investigation which the judge finds does not provide adequate information.) In *Tolbert*, there was a 2-month-old presentence investigation from misdemeanor convictions when the matter of the felony sentencing was before the court, and additionally, there was an advisement by the court on the record on the right to a new presentence investigation before the court took the express waiver. The situation in *Tolbert* was markedly different and distinguishable from what is present here. Moreover, we note that the presentence investigation includes a focus on the crime for which sentence is being pronounced, including police reports and victim impact statements, which is not found in the evaluation procedure. Previous delinquency or criminal experience, social background, family situation, economic status, and education are all arguably required in both an evaluation and presentence investigation, but a presentence investigation and a Department of Correctional Services' evaluation are not the same thing.

We have examined the Department of Correctional Services' evaluation of Kellogg and find that it includes the basic information of his previous criminality by listing the offenses, dates, and

dispositions, but no details of those crimes are provided. His family background and use of chemicals is detailed. The evaluation includes a psychologist's assessment as well as an evaluation of the likelihood of success if community-based probation were used. The evaluation includes his intellectual functioning in the bright, normal range of skills according to the "Shipley Hartford Scale." There is no recommendation for sentencing except that if he is placed on probation, he be involved in a drug program.

## CONCLUSION

The forgery counts, while not directly involved in this appeal, obviously impact the burglary matter because they reveal additional criminal behavior. Those offenses involved checks taken from his older sister and forged (according to the evaluation) for the purpose of obtaining methamphetamine. The burglary involved the entry into a closed Wendy's restaurant and the removal of a safe containing approximately $800 in cash and gift certificates. The sentence imposed upon this 22-year-old offender, albeit one who has been previously incarcerated for burglary on one occasion and second degree forgery on another, is a significant sentence, although it is well within the range of the statutory limits. The Department of Correctional Services' evaluation, at six pages, is somewhat superficial, based on our experience of looking at thousands of presentence investigations. The letters to the court included as part of that evaluation include information suggesting that Kellogg has mental illness of some consequence given the range of medications allegedly prescribed for him during his previous incarcerations. For these reasons, putting aside the problem with the evaluation's being a procedure which by statute follows a presentence investigation, we find that the evaluation does not substitute for the presentence investigation or make it "impractical" as in *State v. Tolbert*, 223 Neb. 794, 394 N.W.2d 288 (1986).

Additionally, while there can be a waiver of a felony offender's right to a presentence investigation, it must be done knowingly and voluntarily, which would include advisement by the court of the right being waived. We point out that one of the purposes for a presentence investigation is for use by the appellate courts in the event of an appeal. Showing that the defendant

knows that no investigation would be available to the appellate courts also goes into assessing whether the waiver was knowing and voluntary.

The district court erred in sentencing Kellogg to a term of 10 to 15 years' imprisonment on the burglary charge without having a presentence investigation as required by § 29-2261 and without there being a knowing and voluntary waiver thereof on the record. Therefore, as was done in *State v. Jackson*, 192 Neb. 39, 218 N.W.2d 430 (1974), and *State v. Zobel*, 192 Neb. 480, 222 N.W.2d 570 (1974), we vacate the sentence and remand the cause to the district court for Dodge County with directions to have a presentence investigation completed and to resentence Kellogg on the burglary conviction. Kellogg will obviously remain in prison during this process due to the unappealed sentences on the forgery convictions. We need not address the claim that the sentence imposed for the burglary conviction was excessive due to our remand.

SENTENCE VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.